IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**WILBERT COOLEY &**
**KANDEE COOLEY,**

      **Plaintiffs,**

**vs.**                                                    **Case No.: 06-215**

**AMERIQUEST MORTGAGE COMPANY,**
**a Delaware Corporation, HERITAGE TITLE, LLC,**
**AND FICTITIOUS A – Z, inclusive,**

      **Defendants.**
_____

## COMPLAINT

      **COMES NOW**, Plaintiffs, Wilbert Cooley and Kandee Cooley, (collectively

"Plaintiffs") by and through undersigned counsel, hereby allege for their Complaint against

Ameriquest Mortgage Company, Heritage Title, LLC, and Fictitious Defendants A through Z,

inclusive (collectively "Defendants"), as follows:

## <u>INTRODUCTION</u>

      1.      Defendants were and are engaged in unfair, unlawful and deceptive business

practices in soliciting, inducing, and closing residential loan transactions in the State of Alabama

and Nationwide.

      2.      Defendants were and are engaged in a persistent "bait and switch" scheme.

Defendants lure borrowers in with promises that their loans will have certain timers and

conditions, and later induce them to sign loan contracts with significantly less favorable terms

and conditions.

3.     During loan transactions, Defendants fail to provide required disclosures, including the statutorily mandated Notice of Right to Cancel. Defendants circumvent statutory protections by misleading borrowers about loan terms and failing to leave a true copy of loan documents in borrowers' possession, ensuring they cannot review them. Defendants have a practice of creating and producing multiple Final HUD-1 forms and not making all forms available to borrowers.

4.     Defendants wrongfully induce borrowers to enter into mortgages that saddle them with monthly payments that exceed their monthly income or which Defendants knows or should know their income cannot support.

5.     Defendants charge unfair and excessive fees and expenses that bear no relation to the services rendered, the borrower's credit or risk profile, or other legitimate considerations, and mislead borrowers about those fees and expenses.

6.     Defendants induce borrowers to sign loan contracts without reading them through manipulation, deceit and high pressure tactics.  Defendants accomplish this by having more than one "alleged" closing.  Defendants will send a runner out to the home of the borrowers who convinces the borrowers to sign, by claiming that another closing with final documents will be held where the borrowers can ask their questions to an attorney knowing full well that no additional closing will occur.

7.     Defendants engage in a pattern of discriminatory conduct--targeting borrowers on the basis of race, national origin, age and gender--and provide those borrowers less favorable terms and conditions in loan contracts than would be provided but for the borrowers' race, national origin, age and/or gender.

2

8.      Due to the predatory lending and unfair business practices summarized above and described in greater detail herein, borrowers who enter loans with Defendants suffer foreclosures at a much higher rate than borrowers with loans from any other privately-held subprime mortgage lender in the country.

9.      Defendants take these actions intentionally, maliciously, and with conscious disregard for borrowers' legal rights and financial well being.  Despite numerous lawsuits, government investigations and community group actions aimed at stopping the Defendants, predatory lending practices, Defendants continue to run their operation in the same fashion.

10.      Defendants will not stop engaging in these predatory and discriminatory lending practices until a court of law forces them to do so through punitive damages.

## <u>PARTIES</u>

11.      Plaintiffs **WILBERT COOLEY** and **KANDEE COOLEY** ("Mr. and Mrs. Cooley") were at all relevant times residents of Mobile, Alabama.  Mr. Cooley is a resident of Mobile County, Alabama and is an African American Citizen in the United States of America. Mrs. Cooley is a resident of Mobile County, Alabama and is an African American Citizen of the United States of America.

12.      Defendant **AMERIQUEST MORTGAGE** is a privately held corporation organized under the laws of the State of Delaware with its principal place of business in Orange, California. Defendant Ameriquest is a foreign corporation incorporated to do business in the State of Alabama, and has a branch in Mobile, Alabama. Ameriquest is the nation's largest privately held subprime lender in the United States of America. Ameriquest is a wholly owned subsidiary of privately held Ameriquest Capital Corporation.

3

13.    Defendant, **HERITAGE TITLE, LLC.** is a domestic company doing business in the State of Alabama and was located in Long Beach Mississippi during all periods of time relevant to this action. **FICTITIOUS PARTIES A THROUGH Z**, inclusive, are sued under fictitious names because their true names and capacities are unknown to Plaintiffs, who will further amend this Complaint when their true names and capacities are learned. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged herein, and that Plaintiffs' damages were caused by those Defendants.

### JURISDICTION & VENUE

14.    This Court has personal jurisdiction over the Defendants named herein because a substantial portion of the wrongdoing alleged in this complaint took place in the Southern District of Alabama, and Defendants are authorized to and regularly do business in the Southern District of Alabama, including Mobile, County.

15.    This is an action for violations of 15 U.S.C. § 1601 *et seq.* (Truth in Lending Act, hereafter "TILA, 42 U.S.C. § 3601 *et seq.* (Fair Housing Act), 15 U.S.C. § 1691 *et seq.* (Equal Credit Opportunity Act), and related state laws.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367 (supplemental jurisdiction).

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and omissions giving rise to this Complaint occurred within the Southern District of Alabama. The loan contracts between Plaintiffs and Defendants were made and are to be performed and the obligations arose in the Southern District of Alabama.

4

**STATEMENT OF FACTS**

17.    During the months of January and February of 2004, Plaintiff Wilbert Cooley was in constant communications with Ms. Mary Kight, an account consultant employed by the American Arbitration and Recovery Group, L.L.C. (AARG) involving an account he and his wife Plaintiff Kandee Cooley had with Regions Financial Corporation. Unable to maintain the terms and/or arrangements they had agreed to with (AARG). Mr. Cooley explained to Ms. Kight that his wife had been injured on her job and that she had been left disabled as a result of her injury and was unable to work and earn a salary to contribute to their household's income.

18.    Ms. Kight of (AARG) empathized with the Cooley's, but soon informed Mr. Cooley that due to their continued failure to comply with the payment arrangements they agreed to involving Regions Financial Corporation for a debt that was in excess of $13,000.00, she had no choice but to have someone from Ameriquest Mortgage Company contact him, a company that they referred people to who were in situations similar to theirs to discuss refinancing the mortgage on their home so that they could comply with the terms of the arrangements with her client.

19.    Subsequent to that conversation with Ms. Kight of (AARG), Mr. Cooley was contacted by a representative from an Ameriquest office who discussed the refinance with him and informed him that he would be contacted by an agent from their Mobile office. Shortly thereafter, Mr. Cooley was contacted by Mr. David Lammons an employee of Ameriquest Mortgage Company located at 1 St. Louis Street, Mobile Alabama.

20.    The Plaintiffs had been in their home at the time they were first contacted by Ameriquest for approximately 7 years and only owed approximately 8 years on a 15 year

5

mortgage with their current lender, Regions Bank which was a local bank owned and operated in Mobile County.

21.     At the time, Plaintiff Wilbert Cooley began working with Ameriquest he was quickly advised that his credit score was under 530, but was assured that he could receive a loan and a good rate with good terms.  After discussing the matter with his wife, Plaintiff Kandee Cooley, they proceeded with the loan process with Defendant. For purposes of the initial loan application, Plaintiffs dealt with Mr. David Lammons, an account executive at Ameriquest Mortgage Company in Mobile Alabama. The process of approval continued for approximately a month, and the Plaintiffs were assured that they would be receiving a good rate despite their credit score.

22.     On April 6, 2004, Plaintiff Wilbert Cooley received a fax from Mr. Lammons revealing all alleged fees associated with the closing, along with the required debts to be paid. The HUD had an estimated settlement date of April 13, 2004, and was marked as such on the faxed copy of the proposed HUD. This HUD-1 also had an estimated equal disbursement to Borrowers of $6,639.39.

23.     Plaintiff Wilbert Cooley was initially advised that he would receive more funds, and Mr. Lammons assured him that he would receive more funds once the amount owed to one of the creditors was reduced.  At this time, on April 6, 2004, Plaintiff Wilbert Cooley advised Mr. Lammons to proceed with the process. Mr. Cooley was informed by David Lammons that a runner would be coming to their home later that evening with some documents for him and his wife, Plaintiff Kandee Cooley to sign.

6

24.     Later that evening, a young man showed up alone at the home of Plaintiffs Wilbert and Kandee Cooley with documents from Ameriquest Mortgage Company. He presented himself to be a runner hired by Ameriquest to get their signatures on the documents he was carrying.  He then proceeded to tell Plaintiffs to sign at various places on the documents. Immediately, Plaintiff Wilbert Cooley noticed that the HUD-1 statement presented by the runner had an amount lower than the HUD presented by Mr. Lammons earlier by fax.  He brought this to the runner's attention, and was advised by the runner that this was not the closing, and the runner encouraged Plaintiffs Wilbert and Kandee Cooley to ask these questions to the Attorney at the closing.  Plaintiffs Wilbert and Kandee Cooley signed the HUD and proceeded.

25.     As the document signing proceeded additional concerns were raised about the interest rate on the note as provided in the Note, but again the runner deferred the questions to the "actual" closing which he said would occur at a later time whereby the Plaintiffs could have all of their questions answered adequately.  After the runner finished obtaining Plaintiffs' signatures, he left.  During the entire time the runner was at the Plaintiff's home, he assured Plaintiffs Wilbert and Kandee Cooley that they would be contacted and told when to come to the I St. Louis Street office of Ameriquest for the final closing.

26.     That evening, Plaintiff Kandee Cooley became uneasy because she did not like the terms outlined in the documents.  She felt that they could work with their present mortgage company to get an extension on their then current mortgage account, but was uneasy about the constant changing terms with Defendant, Ameriquest Mortgage. Plaintiff Wilbert Cooley felt the same way and agreed to go directly to Regions Bank the following morning to discuss getting an extension on their mortgage payment with their current lender. After meeting with the bank

president the next day an agreement was reached that provided the Plaintiffs with a two month reprieve on their mortgage payment. Both Plaintiffs felt that the best route for them financially would be to hold on to the equity in their property and stay on course with the eight years remaining on their mortgage with Regions Bank.

27.     As a result, Plaintiff Wilbert Cooley contacted David Lammons later that day April 7, 2004, and advised him that they were no longer interested in pursuing the loan, and to cancel the process.  At this time, Mr. Lammons eventually stated okay, and told Plaintiff Wilbert Cooley to consider it canceled.  After speaking with Mr. Lammons, Plaintiffs Wilbert and Kandee Cooley considered their loan canceled, and focused their attention on fulfilling their agreement with Regions Bank related to their mortgage.

28.     Over two weeks went by when Plaintiffs Wilbert and Kandee Cooley received a package of checks in the mail from Heritage Title, LLC., on or about April 24, 2004.   There was one check in the package made payable to Wilbert Cooley in the amount of $3,372.74, and copies of several checks going to:

#           Superior Asset Management: $74.00

#           Sears: $1662.00

#           Pinnacle Fin: $188.00

#           Mobile Gas: 31.00

#           MCI Communications: $118.00

#           First Premier: $562.00

#           ESOS: $823.00

#           Conecuh: $175.00

\#  Batchelor's Residential Services: $208.00

\#  Asset Acceptance: $550.00

29. Plaintiff Wilbert Cooley was completely shocked and surprised when his wife contacted him at work on April 26, 2004, to tell him that checks had been delivered to their home earlier that day from Heritage Title, LLC on behalf of Ameriquest Mortgage Company, because as indicated earlier he had spoken with Mr. Lammons on April 7, 2004, the day following the runner's presence at their home on April 6, 2004 and advised Mr. Lammons to cancel the process, and he was told that the process was canceled.   Plaintiffs Wilbert and Kandee Cooley had never attended a final closing, which bore disclosure of any of the amounts and companies indicated on the checks.

30.  Plaintiff Wilbert Cooley immediately returned the checks to Defendant Heritage Title, LLC on April 26, 2004 by certified mail.

31. Plaintiff Wilbert Cooley began contacting the National Office of Ameriquest Mortgage Company located in Orange California and Regions Bank, the local bank that held the mortgage on their home.  Regions Bank advised him that they would be willing to reinstate the loan. Representatives of Ameriquest Mortgage Company, particularly Ms. Cheryl Fleming of the Office of the President began working with Plaintiffs to un-fund the loan payments because they had been disbursed in error, and she began corresponding directly with Regions Bank.  Plaintiffs Wilbert and Kandee Cooley thought the matter would be resolved and the Defendants would be out of their lives, until they received notification in May, 2004, that the un-funding could not occur because Plaintiffs had did not cancel their loan.

9

32.     Plaintiff Wilbert Cooley advised Ms. Fleming with Ameriquest Mortgage Company that they had never had an official closing and were never advised of a right to cancel. Plaintiff repeatedly advised her that he had contacted the Branch Manager of the Ameriquest Mortgage Company in Mobile, Alabama the day after the runner was at their home and was advised by David Lammons to consider the loan canceled.

33.     This process with attempting to un-fund the payment to Regions went on for an entire month. Plaintiff Kandee Cooley began to discuss the matter with Ameriquest because Plaintiff Wilbert Cooley had become emotionally distraught and could no longer handle the matter.  Once Plaintiff Kandee Cooley got involved with the process she pointed out to Ms. Fleming and other Ameriquest Mortgage representatives that the process was unconscionable. She pointed out to Ms. Fleming that the checks they received and returned did not represent the amounts on the HUD-1 document brought by the runner on the evening of April 6, 2004. She even described the HUD in detail to Ms. Fleming on the phone.  It was clear from the checks and the copy of the HUD Plaintiffs had in their possession, that more than one HUD-1 existed, one which Plaintiffs never saw.

34.     Ms. Fleming of Ameriquest Mortgage Company advised Plaintiff Kandee Cooley that the presence of two HUD 1 forms was a problem and assured her that she was going to investigate the matter.  Eventually, Ms. Fleming contacted Plaintiff Kandee Cooley and told her that the HUD she and her husband signed on April 6, 2004 was only an "estimate", and that a final HUD was redone after all the loan conditions were made clear.  Ms. Fleming advised Plaintiff Kandee Cooley that the final loan conditions from underwriting came after April 6, 2004, and included payment of additional debtors.

10

35.     Plaintiff Kandee Cooley explained that this was never disclosed to them, and Ms. Fleming agreed that this should have been disclosed, but advised Plaintiff Kandee Cooley that nothing could be done about it. This process lingered for approximately four months after Plaintiffs had received the checks from Defendant, Heritage Title.  Plaintiffs had even received a notice to foreclose on their property from Defendant in July, 2004, even though Ameriquest knew this matter was in dispute.

36.     At this time Plaintiffs Wilbert and Kandee Cooley filed an official complaint with the United States Department of Housing and Urban Development (HUD) for the discrimination and fraud they experienced on or about April 6, 2004. They received notice from HUD that the matter was going to be investigated, and they began discussing the matter with an investigator, who assured them that the presence of two HUD forms in a transaction was a problem and failure to disclose was a problem as well.

37.     The process with HUD continued on for several months, until the investigator finally advised the Plaintiffs that the first HUD-1 was an estimated HUD just as they had been told by Ms. Fleming. The HUD investigator never addressed the second HUD which was never seen or signed by Plaintiffs and contained different terms than was initially agreed upon. In fact, the HUD investigator became very agitated with Plaintiffs persistence and told them that they should just take a conciliation agreement they had executed and move on. The conciliation agreement basically required a new loan with the Defendants for a higher amount, and would preclude the Plaintiffs from seeking any redress in Federal Court for the acts complained about above.

38.     Eventually, the Defendants changed Plaintiff's loan and a closing occurred,

11

this placed Plaintiffs in an additional financial indebtedness with Ameriquest.

39.     Plaintiffs refused to sign the conciliation agreement executed by HUD, and instead filed this complaint in Court to preclude Defendants from harming other individuals.

40.     These acts of Ameriquest, Heritage Title, and HUD have caused extreme emotional duress on Plaintiffs Wilbert and Kandee Cooley.  Moreover, they have greater financial debt, and Plaintiff Wilbert Cooley recently filed for bankruptcy as a result of the acts of the Defendants, coupled with circumstances revolving around his wife, Plaintiff Kandee Cooley's disability.

<b>CAUSES OF ACTION</b>

<b>FIRST CAUSE OF ACTION<br/>Violation of the Federal Truth in Lending Act<br/>Federal Reserve Regulation Z as to Defendant, Ameriquest</b>

41.     Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 40 inclusive, as if fully set forth herein.

42.     Defendant Ameriquest are creditors within the meaning of the Truth in Lending Act ""TILA") as implemented by Regulation Z.

43.     Defendants violated TILA and Regulation Z by:

a.     Failing to provide Plaintiffs with material disclosures in a form they could keep prior to consummation; and

b.     Failing to provide Plaintiffs with notices of right to cancel that were clear, conspicuous, and reflective of the parties legal obligations.

44.     Any and all statute of limitations relating to disclosures and notices required

12

under 15 U.S.C section 1601 et seq. are tolled due to the Defendant's failure to effectively provide disclosures and notices.

45.     An actual controversy exists, as Plaintiffs believe they have the right to rescind their loans with Defendant, but Defendant denies that right.

46.     As a direct and proximate result of these violations, Plaintiffs were and continue to be damaged in a sum according to proof, not yet ascertained, including but not limited to: statutory damages and all amounts paid or to be paid to Defendant, excluding principle payments.

47.     Defendant has been unjustly enriched at the expense of the Plaintiffs, who are entitled to equitable restitution and recapture of profits realized by the Defendants.

48.     Defendant's acts are willful, wanton and in conscious disregard of Plaintiffs' rights. Plaintiffs are entitled to punitive damages as a result.

**SECOND CAUSE OF ACTION**
**Violation of the Fair Housing Act as to Defendant Ameriquest**

49.     Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 48, inclusive, as if fully set forth herein.

50.     Defendant Ameriquest is an entity that engages in transactions related to residential real estate, and the loans made by the Defendant to Plaintiffs, was such a transaction.

51.     Plaintiffs are minorities.

52.     Plaintiffs are informed and believe, that Defendant engaged in a willfull and malicious pattern and practice of discrimination against them on the basis of their race in the terms and conditions of the loan contracts entered into between Plaintiff on the one had and

Defendant on the other.

53.     Defendant has been challenged before for violating 42 U.S.C. section 3601 *et seq.*, but have willfully and maliciously failed to take effective remedial measures.

54.     As a result, Plaintiffs have been and continue to be damaged as a result of Defendant's discriminatory conduct.  Plaintiffs are entitled from an order from this Court enjoining Defendant from continuing to engage in such discriminatory misconduct

55.     Defendant's acts are willful, wanton and in conscious disregard of Plaintiffs' rights. Plaintiffs are entitled to punitive damages as a result.


### THIRD CAUSE OF ACTION
### Violation of the Equal Credit Opportunity Act as Defendant Ameriquest

56.     Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 55, as if set out here in full.

57.     Defendant Ameriquest are creditors within the meaning of 15 U.S.C. section 1691(e).

58.     The loan contracts that Plaintiff entered into with the Defendant were credit transactions.

59.     Plaintiffs are informed and believe that Defendants engaged in a willful and malicious pattern and practice of discrimination against them on the basis of race in the terms and conditions of the loan contracts entered into between Plaintiffs.

60.     Defendants have been challenged before for violating 15 U.S.C. section 1691 *et seq.* but have willfully and maliciously failed to take effective remedial measures.

14

61.     As a result, Plaintiffs have been and continue to be damaged as a result of Defendant's discriminatory conduct.  Plaintiffs are entitled to an order from this Court enjoining Defendant from continuing to engage in such discriminatory misconduct.

62.     Defendant's acts are willful, wanton and in conscious disregard of Plaintiffs' right. Plaintiffs are entitled to punitive damages as a result.

**FOURTH CAUSE OF ACTION**
**PENDANT STATE CLAIM**
**Violation of Alabama's Unfair Competition Act as to Defendant Ameriquest**

63.     Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 63 as if fully set forth herein.

64.     Plaintiffs are informed and believe and on that basis allege, that Defendant have been engaged in, and continue to engage in, numerous acts and/or a pattern and practice of unfair competition within the State of Alabama in violation of Business and Professions Code of Alabama similar sister state statutes proscribing deceptive business practices. These unfair business practices include, but are not limited to:

a.      Engaging in predatory lending practices in dealing with Plaintiffs;

b.      Failing to provide notices and disclosures required by the Truth in Lending Act and Real Estate Settlement Procedures Act;

c.      Discriminating on the basis of race, national origin;

d.      Violating the Truth and Lending Act, 15 U.S.C. Section 1601, et sq, the Equal Protection Opportunity Act, 15 U.S.C. section 1691, and any other applicable statute.

65.     The above-described unlawful, unfair and fraudulent business practices present an

15

on going threat of injury to Plaintiffs, and the general public.  Plaintiffs and the general public

continue to be financially harmed by such conduct and, unless restrained, Defendants will

continue to engage in such conduct.

66.     Pursuant to this statute and other similar statutes in the State of Alabama,

Plaintiffs are entitled to an order enjoining Defendants from continuing to engage in unfair

competition as defined in the business and Professions Code.

67.     Defendants have been unjustly enriched at the expense of Plaintiffs, who are

therefore entitled to equitable restitution and disgorgement of profits realized by the Defendants.


### FIFTH CAUSE OF ACTION
### PENDANT STATE CLAIM
### Negligent Training as to each Defendant

68.     Plaintiffs hereby incorporate by reference allegations of paragraphs 1 through 67

as if fully set forth herein.

69.     Defendants owed Plaintiffs a duty of reasonable care to train their employees and

agents to comply with all applicable laws, rules and/or regulations and in accordance with

professional, industry wide best practice standards. These laws, rules, regulations, and industry

wide best practices standards were enacted to protect individuals such as Plaintiffs.

70.     Defendants breached their duty to Plaintiffs by failing to adequately train their

employees and agents to comply with professional, industry wide best practices standards and by

allowing their employees and agents to operate without such adequate training.  Moreover,

Defendants conduct fell below the standard of care as they trained and/or actively encouraged

their employees and agents to act in violation of applicable laws, rules and or regulations and

16

professional industry wide best practice standards.  Defendants failed to take reasonable steps to
protect Plaintiffs though they knew or had reason to know that their failure to adequately train
their employees and/or agents would result in the detriment of Plaintiffs.

71.    As a proximate result of Defendant's conduct, Plaintiffs suffered damages
according to proof.

72.    Defendants negligent training was willful, wanton, and in conscious disregard of
Plaintiff's rights. Accordingly, Plaintiffs are entitled to recover punitive damages in an amount to
be established at trial.

### SIXTH CAUSE OF ACTION
### PENDANT STATE CLAIM
### Negligent Supervision as to each Defendant

73.    Plaintiffs hereby incorporate by reference allegations of paragraphs 1 through 72
as if fully set forth herein.

74.    Defendants owed Plaintiffs a duty of reasonable care that required Defendants to
supervise and ensure that their employees and agents complied with all applicable laws, rules
and regulations and in accordance with professional, industry-wide best practices standards.
These laws, rules, regulations and industry-wide best practices standards were enacted to protect
individuals such as Plaintiffs.  Defendants knew or should have known that their employees and
agents had engaged in past and ongoing improper conduct on behalf of Defendants to the
detriment of Defendants' clients and the Defendant's employees posed a reasonably foreseeable
threat to Plaintiffs absent adequate supervision, control or regulation.

75.    Defendants breached their duty to Plaintiffs by failing to adequately and properly

17

supervise, control or regulate their employees and agents to preclude them from engaging in the unlawful conduct described hereinabove, or otherwise to take reasonable steps to protect Plaintiffs.

76.      As a proximate result of Defendants' conduct, Plaintiffs suffered damages according to proof.

77.      Defendants negligent supervision was willful, wanton, and in conscious disregard of Plaintiffs' rights. Accordingly, Plaintiffs are entitled to recover punitive damages in an amount to be established at trial.

**COUNT SEVEN**
**PENDANT STATE CLAIM**
**Fraud and Misrepresentation as to Each Defendant**

78.      Plaintiffs hereby incorporate by reference allegations of paragraphs 1 through 75 as if fully set forth herein.

79.      Defendants committed fraud and misrepresentation against the Plaintiff by presenting one HUD-1 to Plaintiffs, only to later submit another HUD-1 statement which included amounts not previously disclosed to the Plaintiffs. Said amounts were for far less amounts than originally disclosed to Plaintiffs. To date, Plaintiffs have never seen or signed the HUD with the different fees and creditor amounts.

80.      Defendants also committed fraud by failing to submit a final HUD-1 to the Plaintiffs, and telling Plaintiffs that the closing was not occurring, even though the Defendants knew that the closing was in fact occurring on April, 6, 2004.

18

81.     Defendants committed fraud by failing to advise Plaintiffs of their right to rescind, forging certain documents which purported to be a disclosure, which advised Plaintiffs of this right.

82.     Said misrepresentations were willful and wanton, and Plaintiffs are entitled to recover punitive damages and compensatory damages in an amount to be established at trial.

## COUNT EIGHT
## PENDANT STATE CLAIM
### Breach of Fiduciary Duty by Heritage Title, LLC.

83.     Plaintiffs hereby incorporate by reference allegations of paragraphs 1 through 82 as if fully set forth herein.

84.     Defendant, Heritage Title, LLC, breached their duty of care required by legal service providers when the HUD-1, and other documents were executed outside the presence and knowledge of Plaintiffs by their company.

85.     Defendant, Heritage Title also breached their fiduciary duty of care by failing to conduct a proper closing with Plaintiff, where legal counsel or an experienced loan closer went over certain documents with Plaintiffs in order to properly advise Plaintiffs of the content of the documents Plaintiffs signed on the evening of April 6, 2004.  Plaintiffs indeed were never officially advised of the name of their title company.

86.     Plaintiffs were damaged by Defendant Heritage Title, LLC when they breached their duty of care by inducing Plaintiffs to incur cost and a mortgage they agreed to without the benefit of being properly advised about the documents prepared and submitted by Defendant, Heritage Title.

87.     Plaintiffs are entitled to recover punitive damages and compensatory

19

damages in an amount to be established at trial.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for the following relief as to Counts one (1) through seven (7) of the

Complaint:

1.  Actual compensatory damages;

2.  Declaratory judgment declaring that Plaintiffs have a right to rescind their loan

    under the Truth in Lending Act;

3.  Disgorgement of profits;

4.  Restitution;

5.  Punitive Damages;

6.  Injunctive relief;

7.  Attorney fees and cost pursuant to 42 U.S.C. section 3613 © (2) and

    15 U.S.C. section 1640 (a) (3); and 15 U.S.C. section 1691 (e)

8.  Statutory treble damages where permitted

9.  Any other relief the Court deems proper.

**Respectfully submitted,**

**/s/April Engaland-Albright**
**THE JUSTICE GROUP, INC**

20

**COUNSEL:**

**THE JUSTICE GROUP, INC**
**116 MABRY STREET**
**SELMA, ALABAMA 36701**
**(334) 872-7589**
**(334) 877-4890**


**JURY DEMAND**

**PLAINTIFFS REQUEST TRIAL BY JURY**


**/s/April England-Albright**


21